# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY D. CUNNINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-CV-251-SAJ |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER[1/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2/] Plaintiff asserts that the Commissioner erred because (1) the Commissioner failed to consider the December 5, 2003, MRI results which were submitted after the hearing, or failed to give specific reasons for ignoring the MRI results; (2) the Commissioner did not explain the weight given to the opinion of Dr. Prock; (3) the ALJ erred in relying upon the opinion of the non-examining physician when the non-examining physician did not have access to all of the medical records; and (4) the ALJ erred in finding that Plaintiff's ability to perform some of Plaintiff's daily activities indicated

---

[1/]

This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2/]

Administrative Law Judge Stephen C. Calvarese (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated December 16, 2003. [R. at 17-24]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on March 18, 2005. [R. at 6].

an ability to perform work. For the reasons discussed below, the Court **reverses and remands** the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Billy D. Cunningham, was born on January 18, 1967, and was thirty-six years old at the time the ALJ issued his decision. [R. at 93]. Plaintiff is a college graduate with a degree in instructional systems design. [R. at 66]. Plaintiff's previous employment history includes work as an optical lab tech, motel manager, warehouse worker, warehouse manager, U.S. Army material handling specialist, collection clerk/customer service, and tech instructor specialist/professor. [R. at 18]. Plaintiff is six feet tall and weighs approximately 235 pounds. [R. at 105].

Plaintiff injured his hip in 1995 while in the military. Medical records show a history of right hip necrosis with surgery performed on the right hip in 1995. Additionally, Plaintiff had surgery for a left knee injury and documented problems with his right knee. [R. at 197-198]. Plaintiff's medical records also show back pain for which he began treatment in 2000. [R. at 235-294].

The Social Security Administration referred Plaintiff to Dr. Dalessandro for examination in 2002. [R. at 201]. Dr. Dalessandro found that Plaintiff had chronic lumbodorsal strain, chronic cervical strain, post status aseptic necrosis of the right hip with surgery, and chronic knee strain secondary to surgery. [R. at 203]. Dr. Dalessandro also found that Plaintiff had a normal gait in regards to speed, stability and safety. Additionally, Plaintiff had dexterity of gross and fine manipulation, with a grip strength of 41kg in the right hand and 47kg in the left. No joint deformities or swellings were found. [R. at 203]. Plaintiff

had shortness of breath on exertion, and was reportedly taking Tylenol and Naproxen on an as needed basis. [R. at 201]. Plaintiff complained of low back pain, stiffness in his arms, and muscle spasms in his legs. [R. at 201].

Dr. Dalessandro reported that no evidence of chronic venous insufficiency or arterial obstructions was present. Dr. Dalessandro did not find any varicosities, ulcerations, or brawny edema. No signs of muscle atrophy or paralysis were found. Plaintiff was able to heel-and-toe walk and had no trouble getting on or off the examination table. [R. at 202-203]. Dr. Dalessandro concluded that Plaintiff had chronic lumbodorsal strain, chronic cervical strain, and no joint deformities or swellings. Plaintiff's range-of-motions were primarily normal, with Plaintiff's back range-of-motion restricted. [R. at 204].

Plaintiff was also examined by Dr. Prock, a physician with the Veteran's Administration in 2003. [R. at 231]. Dr. Prock found that the Plaintiff was limited to lifting less than ten pounds both frequently and occasionally; no more than two hours of standing and walking during an eight hour period, and less than two hours of sitting during an eight hour period; position changes every twenty minutes while sitting, position changes every ten minutes while standing; and Plaintiff would need to lie down at unpredictable intervals for up to five times during an eight hour period. [R. at 231-234].

Plaintiff applied for disability benefits in September 2002 and, after a hearing in October of 2003, was denied benefits in December of 2003. [R. at 17-24, 93]. A medical expert, Dr. Spencer, testified at the hearing before the ALJ as to his assessment of the severity of the Plaintiff's impairments. Dr. Spencer noted that he was missing records for Plaintiff indicating how Plaintiff was injured, the treatment Plaintiff received for his injury, the operative procedures followed, follow-up on Plaintiff's treatment, and x-rays. [R. at 37].

Dr. Spencer did believe that he had sufficiently reviewed enough records to reach a conclusion. Dr. Spencer found the Plaintiff had no "severe" impairment as defined under the Social Security guidelines. Dr. Spencer compared the examination reports by Dr. Dalessandro and Dr. Prock in reaching his conclusion. [R. at 38].

Dr. Spencer testified that the only restrictions he would place on Plaintiff would be that Plaintiff be allowed to sit and stand at will, and that he should avoid stooping, squatting, crawling, and climbing ladders. [R. at 44]. Dr. Spencer found no need to restrict Plaintiff's lifting, nor did Dr. Spencer feel that Plaintiff should refrain from pushing and pulling. [R. at 44-45]. Dr. Spencer does state, in the record, that he agreed with Dr. Prock's assessment that Plaintiff needs to be able to shift from sitting to standing. [R. at 46].

At the conclusion of the hearing, Dr. Spencer completed a Medical Source of Ability to Do Work form for Plaintiff. Dr. Spencer noted that Plaintiff could lift 100 pounds occasionally and 50 pounds frequently. Plaintiff could stand or walk six out of eight hours, and Plaintiff's ability to sit was not effected. [R. at 244].

A Residual Functional Capacity Assessment was completed on December 19, 2002. The physician concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand for six hours in an eight hour day, and sit for six hours in an eight hour day. [R. at 233]. The assessment was "affirmed as written" on March 3, 2003. [R. at 223].

Plaintiff testified at the hearing as to his symptoms. He reported pain in the "middle, lower back and right hip area" when lifting more than twenty pounds. [R. at 50]. Plaintiff stated that if he walks for 20 - 30 minutes he experiences pain. [R. at 50]. Plaintiff also noted that he has to shift when sitting. [R. at 50]. Plaintiff additionally claimed numbness from his right buttock, down to his right foot and a tightness in his back that caused pain.

[R. at 51]. He testified that he had trouble walking, standing, or sitting for extended periods of time. [R. at 51-52]. He reported requiring frequent treatments for his back that forced him to regularly miss work, and resulted in his termination from a cellular phone company. [R. at 53].

Plaintiff also testified about his regular daily activities. He reported that he takes his children to school in the mornings, helps around the house by folding laundry or running errands, and spends time doing research on the internet. [R. at 54-55]. Plaintiff drives a standard transmission truck, which he claims causes him pain to operate. [R. at 60]. He reports that he helps create "youth sports websites," volunteers for kids youth groups, and speaks at schools. [R. at 61]. Plaintiff also attends church every Sunday and is on the board of directors of the Claremore Youth Football Association. [R. at 62].

Plaintiff also listed activities that he is unable to perform. He claimed he is unable to empty the trash, make the bed, wash dishes, vacuum or do yard work. However, he says he is able to dress and bathe himself and do some cooking. [R. at 63]. Plaintiff noted that he takes pain medication two to three times each day. [R. at 57].

Plaintiff's medications list include Naproxen and Tylenol with Codeine. [R. at 150, 153]. Plaintiff receives disability from the Veteran's Administration which has found Plaintiff 100% disabled. [R. at 155]. Dr. Prock noted, on May 9, 2003, that the VA and Oklahoma Vocational Rehabilitation considered Plaintiff unemployable. [R. at 316].

Plaintiff has numerous visits to the doctor complaining of knee swelling and knee pain. [R. at 164, 185, 197, 316].

The vocational expert testified regarding the types of employment that Plaintiff could still perform. The vocational expert concluded that Plaintiff would still be able to perform

many of his previous jobs including optical lab technician, professor/technical specialist, warehouse manager, and customer service representative. [R. at 72]. The vocational expert found these jobs could all be performed by an individual with the following restrictions: sitting and standing at will; no repetitive squatting, stooping, crawling, kneeling, balancing, or climbing stairs or ladders; and lifting 50 to 100 pounds occasionally. [R. at 71].

ALJ issued his opinion on December 16, 2003. [R. at 24]. He found Plaintiff retained the following residual functional capacity: lift/carry 100 pounds occasionally and 50 pounds frequently; stand and/or walk about six hours in an eight hour period; sitting is not affected by his impairments; pushing and/or pulling are not affected by impairment; can occasionally climb ramps/stairs/ladders/ropes/scaffolds; occasionally balance; and can never kneel/crouch/crawl. [R. at 22].

After determining Plaintiff's residual functional capacity the ALJ determined which past relevant work was still possible for Plaintiff to perform. Based on the testimony of the vocational expert the ALJ found that warehouse manager, customer service representative, optical lab technician, and professor/technical specialist were all viable employment options for Plaintiff. [R. at 23]. As a result of these findings, the ALJ determined that Plaintiff was not entitled to a period of disability or Disability Insurance Benefits under sections 216(I) and 223. [R. at 24].

After the decision by the ALJ was issued, Plaintiff subsequently filed additional evidence with the Appeals Council. The additional evidence included an MRI that was completed after the conclusion of the hearing, but prior to the issuance of the ALJ's opinion. Plaintiff maintains that the MRI shows the exact nature of the back pain that the Plaintiff

has suffered. [R. at 393]. The Appeals Council denied Plaintiff's request for review in March of 2005. [R. at 6].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. § 404.1520. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See* <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The

---

[4/] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had aseptic necrosis of the right hip; chronic lumbodorsal strain; chronic cervical strain; and chronic knee strain secondary to surgery. The ALJ noted that the impairments were not severe enough to meet or medically equal an impairment listed in Appendix 1, subpart P, Regulations No. 4 (the "listings"). [R. at 21].

The ALJ found that Plaintiff's assertions regarding his limitations were not totally credible. [R. at 23]. The ALJ concluded that Plaintiff could lift/carry 100 pounds occasionally and 50 pounds frequently; stand and/or walk about six hours in an eight hour day; sitting is not affected by Plaintiff's impairments; pushing and/or pulling is not affected by impairments; can occasionally climb ramps/stairs/ladders/ropes/scaffolds; occasionally balance; but can never kneel/crouch/crawl. [R. at 22]. The ALJ found that Plaintiff retained the residual functional capacity necessary to perform the following past relevant work: warehouse manager, customer service representative, optical lab technician, professor/technical specialist. [R. at 22-23].

## IV.  REVIEW

**Submission of Additional Evidence by Plaintiff After ALJ Hearing**

By cover letter dated November 21, 2003[5/], Plaintiff's attorney submitted documents from the Veteran's Administration, including an MRI test which Plaintiff had on December 5, 2003. An MRI record dated December 5, 2003, and printed December 9, 2003, has a "received" stamp by OHA indicating it was received on December 11, 2003. The ALJ's decision was issued December 16, 2003, which indicates that all of these records were received by OHA prior to the issuance by the ALJ of his decision.[6/]

Dr. Prock's notes indicate that the Veterans Administration and the Oklahoma Vocational Rehabilitation found that Plaintiff is unemployable. [R. at 387]. Dr. Prock notes that Plaintiff has chronic hip and knee pain and is unemployable due to the chronic pain in his right hip. [R. at 388].

The MRI of the lumbar spine was interpreted as indicating a small L/2-3 disc protrusion containing an annular fissure, near impingement of the right L/3 nerve root. The L/4-5 disc with left intraforaminal annular fissure and bulge was noted as almost impinging the left L/4 nerve root. The L/5-S/1 disc was shown with posterior midline annular fissure. [R. at 393].

---

[5/]  The record contains no explanation for a November 21, 2003 date for a letter submitting December 5, 2003 records.

[6/] Defendant represents in Defendant's brief that the ALJ did not receive these documents prior to the issuance of his decision. However, the submitted documents are stamped as "received" by the Office of Hearing and Appeals, dated December 11, 2003. The ALJ's decision is dated December 16, 2003. Defendant offers no further explanation for Defendant's representation. Neither party discusses whether documents received prior to the issuance of the ALJ's decision are included within the documents that are considered to have been reviewed by the ALJ.

As noted in Plaintiff's brief, the new records were assigned the number "AC-4" rather than labeled consecutively with the records that were submitted to the ALJ. Plaintiff hypothesizes that the new evidence was not given to the ALJ for review although it was received by the Office of Hearing and Appeals prior to the issuance by the ALJ of his decision on December 16, 2003.

The Court has reviewed this decision and concludes that it must be reversed for further proceedings on other grounds. The Court also notes that one basis for the opinion of Dr. Spencer, upon whom the ALJ heavily relied, was the lack of specific objective evidence to support the findings by Dr. Prock. The MRI provides some objective evidence that could be of assistance on remand. The Court remands this case on other grounds and declines to further address this issue.

**ALJ Failed to Adequately Assess Opinions of Dr. Spencer and Dr. Prock**

Plaintiff argues that the ALJ erred by failing to explain the weight given by the ALJ to the opinion of Dr. Prock, and that the ALJ failed to adequately explain the adoption of Dr. Spencer's opinion over the opinion of Dr. Prock.

Plaintiff received most of his treatment at the Veterans Administration. Prior to the hearing before the ALJ, Plaintiff transferred his treatment from the Oklahoma City VA clinic to the Tulsa VA clinic. After his transfer to the Tulsa VA clinic, Dr. Prock became Plaintiff's physician. [R. at 316]. Dr. Prock examined Plaintiff and filed a medical source statement of ability to do work related activities dated May 19, 2003. [R. at 231]. Prior to the hearing before the ALJ, Dr. Prock examined Plaintiff relatively few times. During the hearing before the ALJ, the ALJ refers to Dr. Prock as Plaintiff's "treating physician." [R. at 41]. In the ALJ's opinion, the ALJ does not specifically address Dr. Prock as a treating physician and

does not engage in a "treating physician" analysis of Dr. Prock's opinion of Plaintiff's abilities.

The Court agrees that determining the weight given by the ALJ to the opinion of Dr. Prock as to Plaintiff's abilities is not possible. Although the ALJ briefly refers to Dr. Prock during the hearing as Plaintiff's "treating physician," the ALJ does not assess Dr. Prock's opinion in the manner normally afforded a treating physician. The ALJ does summarize Dr. Prock's opinion, but the only insight into the weight given to the opinion is the ALJ's conclusory statements that "the undersigned concurs with Dr. Spencer's assessment as he is familiar with Social Security Rules and Regulations, and his opinion is supported by objective medical evidence." [R. at 21].

Plaintiff does not argue that the ALJ erred by failing to assess Dr. Prock's opinion as a treating physician. The Court has already noted that reversal in this case is required for other reasons. On remand, the ALJ should analyze Dr. Prock's opinion and determine whether or not Dr. Prock is or should be considered a treating physician.

**ALJ's Wholesale Adoption of Dr. Spencer's Opinion Not Supported by Substantial Evidence**

The ALJ gave the testimony of the medical expert, Dr. Spencer, more weight than the examination performed by Dr. Prock. Plaintiff argues that it was error for the ALJ to rely on the opinion of Dr. Spencer because Dr. Spencer did not review all of the medical records in this case. Plaintiff also notes that Dr. Spencer did not examine Plaintiff. Plaintiff asserts that the ALJ erred in conclusively relying upon the opinion of Dr. Spencer.

Dr. Spencer concluded that Plaintiff could lift 100 pounds occasionally, 50 pounds frequently, and had few other limitations. Dr. Spencer noted that he had not reviewed

numerous medical records and had not examined Plaintiff. However, Dr. Spencer believed that he had reviewed a sufficient number of records to form an opinion. The ALJ adopts the opinion of Dr. Spencer. The ALJ gives only two reasons for preferring the opinion of Dr. Spencer. First, the ALJ states that Dr. Spencer is more familiar with the Social Security Rules and Regulations. This might be true, however the ALJ is the ultimate arbiter of the rules and regulations, with the ALJ basing his conclusions on medical evidence. The Court cannot conclude that this reason is sufficient for the preference given by the ALJ to the opinion of Dr. Spencer.

The ALJ's second reason for adopting the opinion of Dr. Spencer is that Dr. Spencer's opinion is based on objective medical evidence. However, the ALJ never notes what objective medical evidence supports Dr. Spencer's opinion. Dr. Spencer found that Plaintiff could lift 100 pounds occasionally and 50 pounds frequently. Nothing in the record supports such a finding other than the opinion of Dr. Spencer. Two non-examining Social Security doctors indicated Plaintiff could lift twenty pounds frequently. [R. at 223]. Dr. Dalessandro found restricted range-of-motions for Plaintiff. [R. at 204]. The Veteran's Administration concluded Plaintiff was disabled, and Dr. Prock indicated Plaintiff could lift and carry less than ten pounds.

The Court concludes that the ALJ did not adequately explain his reliance on the opinion of Dr. Spencer, and that the record does not support the conclusion that Plaintiff can lift 100 pounds occasionally and 50 pounds frequently.

On remand, the ALJ should evaluate the additional medical evidence, consider the opinions of Dr. Spencer and Dr. Prock, and determine whether or not Dr. Prock is a treating physician.

Dated this 26th day of June 2006.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge